Melissa A. Alcantara
**DICKINSON WRIGHT PLLC**
1825 I St., N.W., Suite 900
Washington, DC 20006
T: (202) 659-6949
F: (844) 670-6009
E: MAlcantara@dickinsonwright.com
*Attorney for Plaintiffs Channel Trade Finance 1 SPC, on behalf of and for the account of TF 1.1*
*SP, and Channel Trade Finance 2 SPC, on behalf of and for the account of TF 2.1 SP*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHANNEL TRADE FINANCE 1 SPC, ON BEHALF OF AND FOR THE ACCOUNT OF TF 1.1 SP, and CHANNEL TRADE FINANCE 2 SPC, ON BEHALF OF AND FOR THE ACCOUNT OF TF 2.1 SP,<br><br>         Plaintiffs,<br><br>    v.<br><br>NEOPHARMA LLC and NEXGEN PHARMA FZ-LLC,<br><br>         Defendants. | Civil Action No. _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Channel Trade Finance 1 SPC, on behalf of and for the account of TF 1.1 SP, one of its segregated portfolios ("CTF 1") (having its principal place of business located at Walkers Fiduciary Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands) and Channel Trade Finance 2 SPC, on behalf of and for the account of TF 2.1 SP, one of its segregated portfolios ("CTF 2") (having its principal place of business located at Walkers Fiduciary Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands), by and through its undersigned

attorneys, bring this Complaint for fraud, civil conspiracy, racketeering, breaches of contract and related covenants, conversion, and unjust enrichment in connection with agreements with payments totaling $6,999,902.40, against Neopharma LLC ("Neopharma") (having its designated United States office at 211 College Road East, Suite 101, Princeton, NJ 08540 and place of business identified in the documents referenced in this Complaint as Plot A-1 89-95, Industrial City of Abu Dhabi (ICAD), Mussafah, Abu Dhabi, UAE), and against Nexgen Pharma FZ-LLC ("Nexgen") (having its principal place of business located at Al Razi Bldg., Floor 3, Building 64 Unit 3011, Dubai Healthcare City, Dubai, UAE) (collectively, "Defendants"), and allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Neopharma and Nexgen, both suppliers to wholly owned subsidiaries of a London Stock Exchange ("LSE") listed company with ownership and leadership ties to the two suppliers, entered into an arrangement under which both Neopharma and Nexgen failed to repay to Plaintiffs funds that Neopharma and Nexgen appear to claim they received in error, despite Plaintiffs having paid to them just less than $7 million.  Notwithstanding a well-established practice, protocol, and routine for the relevant subsidiary of the LSE-listed company making payments under the agreement with Plaintiffs, and Neopharma and Nexgen accepting payments from Plaintiffs on invoices in a format in common use between the parties, Neopharma and Nexgen disavowed familiarity with and failed to repay funds paid on certain invoices by Plaintiffs, promptly after the CEO of the LSE-listed company resigned under a cloud of allegations of major fraud.  The commonality of the language and timing of Neopharma's and

Nexgen's repudiation reply e-mails suggested a level of coordination and conspiracy the sole purpose of which was to defraud Plaintiffs out of just less than $7 million.

## THE PARTIES

2.      Channel Trade Finance 1 SPC is an exempted company incorporated with limited liability and registered as a segregated portfolio company under the laws of the Cayman Islands having its registered office at the offices of Walkers Fiduciary Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands.  The first Plaintiff here is Channel Trade Finance 1 SPC, on behalf of and for the account of TF 1.1 SP, one of its segregated portfolios.

3.      Channel Trade Finance 2 SPC is an exempted company incorporated with limited liability and registered as a segregated portfolio company under the laws of the Cayman Islands having its registered office at the offices of Walkers Fiduciary Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands.  The second Plaintiff here is Channel Trade Finance 2 SPC, on behalf of and for the account of TF 2.1 SP, one of its segregated portfolios.

4.      Defendant Neopharma LLC is a global pharmaceutical manufacturing company incorporated with limited liability and having its designated United States office at 211 College Road East, Suite 101, Princeton, NJ 08540 and place of business identified in the documents referenced in this Complaint as Plot A-1 89-95, Industrial City of Abu Dhabi (ICAD), Mussafah, Abu Dhabi, UAE.  Dr. Bavaguthu Raghuram Shetty ("Dr. B.R. Shetty") is the Founder and Chairman of Neopharma.  Neopharma is the 100% owner of Neopharma Inc., which is a regional office and formulations facility for Neopharma and is located at 211 College Road East Suite

101, Princeton, NJ 08540.   Additionally, Neopharma holds itself out to the marketplace as working currently with Pfizer, USA, on product licensing.

5.      Defendant Nexgen Pharma FZ-LLC is a pharmaceutical manufacturing company incorporated with limited liability and having its principal place of business located at Al Razi Bldg., Floor 3, Building 64 Unit 3011, Dubai Healthcare City, Dubai, UAE.  Nexgen is a joint venture between Hetero Group of India and Neopharma, each of which owns 50% of Nexgen.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between a citizen of Cayman Islands and a citizen of New Jersey, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3), in that this is a civil action between a citizen of Cayman Islands and citizen of the United Arab Emirates who is an additional party, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(3), in that Neopharma is subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## GENERAL ALLEGATIONS

### A.  Background

9.      NMC Healthcare LLC ("NMC") is a health care services provider in the UAE. NMC is a wholly-owned indirect subsidiary of NMC Health plc ("NMC plc"), the largest private healthcare company in the UAE.

10.     Dr. B.R. Shetty is the Founder and former joint Chairman of NMC plc.  Dr. B.R. Shetty resigned as joint non-executive Chairman of NMC plc in February 2020.  On or about April 8, 2020, NMC plc went into administration in the United Kingdom due to the cash flow insolvency of the company amid allegations of fraud in NMC plc's finances.

11.     Channel Capital Advisors LLP ("Channel") advances working capital from its managed fund offerings, to facilitate technology-enabled business finance.

12.     Reverse factoring is when a finance company interposes itself between a company and its suppliers and pays the company's invoices to the suppliers at an accelerated rate in exchange for a discount.

13.     Channel has managed supply chain financing arrangements for NMC since the second quarter of 2018 in multiple reverse factoring written agreements, often referred to as "programmes."   In each such programme, among other things, NMC was responsible for selecting and engaging the Suppliers (defined in ¶19) that would participate in the programme.

14.     In the programme at issue here, Channel served as the "Investment Manager" to CTF 1 (pursuant to an "Investment Management Agreement") and the "Programme Manager" to CTF 2 (pursuant to a "Programme Management Agreement").   Channel's responsibilities included performing functions on behalf of Plaintiffs, such as managing cash flows and the purchase of assets.

15.     In relation to the relevant programme, NMC purchased goods from Neopharma and Nexgen, two of NMC's Suppliers that NMC had paid previously in other programmes with Channel.   Pursuant to individual written supply chain financing arrangements with NMC, Neopharma, and Nexgen, Plaintiffs made payments to Defendants at a discounted rate on certain NMC invoices, and NMC agreed to be responsible for paying the full amount of the invoices to

Plaintiffs at a later date in exchange for Plaintiffs making the payments for NMC's orders from Defendants.

**B.  The Agreements**

16.     On or about July 30, 2019, Plaintiffs entered into a reverse factoring customer agreement with NMC ("Customer Agreement").  A redacted copy of the Customer Agreement is attached as Exhibit 1.

17.     According to the Customer Agreement, CTF 1 was the "Funder," CTF 2 was the "Payment Agent," and NMC was the "Obligor."

18.     Per the Customer Agreement, CTF 1 was to sell commodities to CTF 2 (as agent for and on behalf of NMC) pursuant to a murabaha agreement, an Islamic financing structure often used in supply chain financing arrangements in which the seller and buyer agree to the cost and markup of an asset.  Under the Agreement, CTF 2 was to use the sale proceeds of those commodities to pay Suppliers on behalf of NMC.  NMC was then obliged to pay a set payment price for the commodities CTF 2 purchased as NMC's agent and on NMC's behalf pursuant to the applicable murabaha contracts to CTF 1.

19.     Under the Customer Agreement, a Supplier for NMC was any individual or business entity with whom a Supplier Agreement was in force at the relevant time.

20.     On or about July 30, 2019, CTF 2 entered into respective reverse factoring Supplier Agreements with Neopharma and Nexgen (individually, "Neopharma Supplier Agreement" and "Nexgen Supplier Agreement,' and collectively, "Supplier Agreements").  A redacted copy of the Neopharma Supplier Agreement is attached as Exhibit 2, and a redacted copy of the Nexgen Supplier Agreement is attached as Exhibit 3.

21.     Per the Supplier Agreements, Neopharma and Nexgen each agreed to accept early payment from CTF 2 on NMC's behalf of accounts receivables arising out of respective commercial transactions between NMC and each of Neopharma and Nexgen for a discounted amount in full and final satisfaction of such accounts receivable.

22.     Dr. B.R. Shetty, acting as Neopharma's Managing Director, signed the Neopharma Supplier Agreement for and on behalf of Neopharma.

23.     The Neopharma and Nexgen Supplier Agreements were executed and implemented, and transactions commenced thereafter under both Supplier Agreements.

**C. Repaid Transactions**

*1) August 1, 2019 - Neopharma*

24.     On or about August 1, 2019, Mr. Priyesh Krishnan ("Krishnan"), Accounts Executive – Treasury & Corporate Finance at NMC, sent an e-mail ("August 1, 2019 Invoice E-mail) with an attached invoice ("Neopharma Invoice 5712"), delivery note ("Neopharma Delivery Note 5712"), and spreadsheet ("August 1 Spreadsheet") to Ms. Lauren Woods ("Woods"), Operations and Transaction Manager at Channel to request that CTF 2 make a payment to Neopharma on NMC's behalf in accordance with the contents of the aforementioned documents pursuant to the Neopharma Supplier Agreement.  A redacted copy of the August 1, 2019 Invoice E-mail is attached as Exhibit 4, and a redacted copy of Neopharma Invoice 5712 and Neopharma Delivery Note 5712 are attached as Exhibit 5.  The August 1 Spreadsheet contained invoice details and proposed Murabaha instructions.  Soon after sending the August 1, 2019 Invoice E-mail, on or about August 1, 2019, Mr. Krishnan sent Ms. Woods an e-mail ("August 1, 2019 Signed Instructions E-mail) with attached signed Murabaha instructions, including one for the August 1, 2019 transaction with Neopharma.  A redacted copy of the

August 1, 2019 Signed Instructions E-mail is attached as Exhibit 6, and a redacted copy of the signed Murabaha Instruction pertaining to the August 1, 2019 transaction with Neopharma is attached as Exhibit 7.

25.      The terms of the August 1, 2019 transaction were (1) CTF 2, from its own bank account or CTF 1's bank account, would pay Neopharma $2,909,565.22 at CTF 2's earliest convenience on or about August 1, 2019 for Neopharma having shipped the goods described in Neopharma Invoice 5712 and Neopharma Delivery Note 5712 to NMC's warehouse in Abu Dhabi, UAE on or about May 18, 2019; and (2) NMC would pay CTF 1 $2,969,505.20 on or before November 14, 2019.

26.      On or about August 1, 2019, CTF 2 paid Neopharma $2,909,565.22 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of New York Mellon, New York to the account at the Arab Bank for Investment and Foreign Trade in the name of Neopharma ending in 0877 in accordance with the Neopharma Supplier Agreement.  A redacted copy of the SWIFT wire payment receipt of CTF 2's payment to Neopharma is attached as Exhibit 8.

27.      On or about November 12, 2019, NMC paid CTF 1 $2,969,505.20 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of New York Mellon, London in the name of CTF 1 ending in 0000 in accordance with their Customer Agreement. NMC transferred the funds to the CTF 1 account ending in 0000, as opposed to CTF 1's account specified in the Customer Agreement, at CTF 1's request.  A redacted copy of the SWIFT wire payment receipt of NMC's payment to CTF 1 is attached as Exhibit 9.

        *2) August 1, 2019 - Nexgen*

28.     In the August 1, 2019 Invoice E-mail from on or about August 1, 2019, Mr. Krishnan also sent to Ms. Woods an attached invoice ("Nexgen Invoice 7099"), delivery note ("Nexgen Delivery Note 7099"), and the August 1 Spreadsheet to request that CTF 2 make a payment to Nexgen on NMC's behalf in accordance with the contents of the aforementioned documents pursuant to the Nexgen Supplier Agreement.  A redacted copy of Nexgen Invoice 7099 and Nexgen Delivery Note 7099 are attached as Exhibit 10.  Soon after sending the August 1, 2019 Invoice E-mail, on or about August 1, 2019, Mr. Krishnan sent Ms. Woods the August 1, 2019 Signed Instructions E-mail with attached signed Murabaha instructions, including one for the August 1, 2019 transaction with Nexgen.  A redacted copy of the signed Murabaha Instruction pertaining to the August 1, 2019 transaction with Nexgen is attached as Exhibit 11.

29.     The terms of the August 1, 2019 transaction were (1) CTF 2, from its own bank account or CTF 1's bank account, would pay Nexgen $2,587,031.21 at CTF 2's earliest convenience on or about August 1, 2019 for Nexgen having shipped the goods described in Nexgen Invoice 7099 and Nexgen Delivery Note 7099 to NMC's warehouse in the UAE on or about May 26, 2019; and (2) NMC would pay CTF 1 $2,644,432.00 on or before November 22, 2019.

30.     On or about August 1, 2019, CTF 2 paid Nexgen $2,587,031.21 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 in accordance with the Nexgen Supplier Agreement.  A redacted copy of the SWIFT wire payment receipt of CTF 2's payment to Neopharma is attached as Exhibit 12.

31.     On or about November 20, 2019, NMC paid CTF 1 $4,028,448.64 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of New York Mellon,

London in the name of CTF 1 ending in 5500 in accordance with their Customer Agreement. The $4,028,448.64 payment included the $2,644,432.00 NMC agreed to pay CTF 1 on or before November 22, 2019 pursuant to the August 1, 2019 transaction relating to Nexgen Invoice 7099 and Nexgen Delivery Note 7099.   A redacted copy of the SWIFT wire payment receipt of NMC's payment to CTF 1 is attached as Exhibit 13.

*3) August 7, 2019 - Neopharma*

32.      On or about August 7, 2019, Mr. Krishnan sent an e-mail ("August 7, 2019 Invoice E-mail") with an attached invoice ("Neopharma Invoice 5750"), delivery note ("Neopharma Delivery Note 5750"), and spreadsheet ("August 7 Spreadsheet") to Ms. Woods to request that CTF 2 make a payment to Neopharma on NMC's behalf in accordance with the contents of the aforementioned documents pursuant to the Neopharma Supplier Agreement.   A redacted copy of the August 7, 2019 Invoice E-mail is attached as Exhibit 14, and a redacted copy of Neopharma Invoice 5750 and Neopharma Delivery Note 5750 are attached as Exhibit 15.   The August 7 Spreadsheet contained invoice details and proposed Murabaha instructions. Soon after sending the August 7, 2019 Invoice E-mail, on or about August 7, 2019, Mr. Krishnan sent Ms. Woods an e-mail ("August 7, 2019 Signed Instructions E-mail) with an attached signed Murabaha instruction for the August 7, 2019 transaction with Neopharma.   A redacted copy of the August 7, 2019 Signed Instructions E-mail is attached as Exhibit 16, and a redacted copy of the signed Murabaha Instruction pertaining to the August 7, 2019 transaction with Neopharma is attached as Exhibit 17.

33.      The terms of the August 7, 2019 transaction were (1) CTF 2, from its own bank account or CTF 1's bank account, would pay Neopharma $149,325.95 at CTF 2's earliest convenience on or about August 7, 2019 for Neopharma having shipped the goods described in

Neopharma Invoice 5750 and Neopharma Delivery Note 5750 to NMC's warehouse in Abu Dhabi, UAE on or about June 4, 2019; and (2) NMC would pay CTF 1 $152,679.59 on or before December 1, 2019.

34.     On or about August 7, 2019, CTF 2 paid Neopharma $149,325.95 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of New York Mellon, New York to the account at the Arab Bank for Investment and Foreign Trade in the name of Neopharma ending in 0877 in accordance with the Neopharma Supplier Agreement.  A redacted copy of the SWIFT wire payment receipt of CTF 2's payment to Neopharma is attached as Exhibit 18.

35.     On or about November 26, 2019, NMC paid CTF 1 $152,679.59 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of New York Mellon, London in the name of CTF 1 ending in 5500 in accordance with their Customer Agreement.  A redacted copy of the SWIFT wire payment receipt of NMC's payment to CTF 1 is attached as Exhibit 19.

**D.  Outstanding Transactions**

*1) November 13, 2019 - Neopharma*

36.     On or about November 13, 2019, Mr. Krishnadas Thencheeri ("Thencheeri"), Executive – Treasury at NMC, sent an e-mail ("November 13, 2019 Invoice E-mail") with an attached invoice ("Neopharma Invoice 6334"), delivery note ("Neopharma Delivery Note 6334"), and spreadsheet ("November 13 Spreadsheet") to Ms. Anna Rayner ("Rayner"), Operations and Transaction Manager at Channel to request that CTF 2 make a payment to Neopharma on NMC's behalf in accordance with the contents of the aforementioned documents pursuant to the Neopharma Supplier Agreement.  A redacted copy of the November 13, 2019

Invoice E-mail is attached as Exhibit 20, and a redacted copy of Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are attached as Exhibit 21.  The November 13 Spreadsheet contained invoice details and proposed Murabaha instructions.  Soon after sending the November 13, 2019 Invoice E-mail, on or about November 13, 2019, Mr. Thencheeri sent Ms. Rayner an e-mail ("November 13, 2019 Signed Instructions E-mail) with an attached signed Murabaha instruction for the November 13, 2019 transaction with Neopharma.  A redacted copy of the November 13, 2019 Signed Instructions E-mail is attached as Exhibit 22, and a redacted copy of the signed Murabaha Instruction pertaining to the November 13, 2019 transaction with Neopharma is attached as Exhibit 23.

37.     The terms of the November 13, 2019 transaction were (1) CTF 2, from its own bank account or CTF 1's bank account, would pay Neopharma $2,909,439.00 at CTF 2's earliest convenience on or about November 13, 2019 for Neopharma having shipped the goods described in Neopharma Invoice 6334 and Neopharma Delivery Note 6334 to NMC's warehouse on or about November 10, 2019; and (2) NMC would pay CTF 1 $3,010,299.50 on or before May 8, 2020.

38.     On or about November 13, 2019, CTF 2 paid Neopharma $2,909,439.00 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of New York Mellon, New York to the account at the Arab Bank for Investment and Foreign Trade in the name of Neopharma ending in 0877 in accordance with the Neopharma Supplier Agreement.  A redacted copy of the SWIFT wire payment receipt of CTF 2's payment to Neopharma is attached as Exhibit 24.

39.    The May 8, 2020 payment deadline has passed, and CTF 1 has not received payment.  And, as discussed further below, Neopharma has disavowed familiarity with the invoice on which it was paid.

*2) November 25, 2019 - Nexgen*

40.    On or about November 25, 2019, Mr. Thencheeri, who 12 days earlier transmitted Neopharma Invoice 6334, sent an e-mail ("November 25, 2019 Invoice E-mail") with an attached invoice ("Nexgen Invoice 7795"), delivery note ("Nexgen Delivery Note 7795"), and spreadsheet ("November 25 Spreadsheet") to Ms. Rayner to request that CTF 2 make a payment to Nexgen on NMC's behalf in accordance with the contents of the aforementioned documents pursuant to the Nexgen Supplier Agreement.  A redacted copy of the November 25, 2019 Invoice E-mail is attached as Exhibit 25, and a redacted copy of Nexgen Invoice 7795 and Nexgen Delivery Note 7795 are attached as Exhibit 26.  The November 25 Spreadsheet contained invoice details and proposed Murabaha instructions.  Soon after sending the November 25, 2019 Invoice E-mail, on or about November 25, 2019, Mr. Thencheeri sent Ms. Rayner an e-mail ("November 25, 2019 Signed Instructions E-mail) with an attached signed Murabaha instruction for the November 25, 2019 transaction with Nexgen.  A redacted copy of the November 25, 2019 Signed Instructions E-mail is attached as Exhibit 27, and a redacted copy of the signed Murabaha Instruction pertaining to the November 25, 2019 transaction with Nexgen is attached as Exhibit 28.

41.    The terms of the November 25, 2019 transaction were (1) CTF 2, from its own bank account or CTF 1's bank account, would pay Nexgen $3,940,741.58 at CTF 2's earliest convenience on or about November 25, 2019 for Nexgen having shipped the goods described in Nexgen Invoice 7795 and Nexgen Delivery Note 7795 to NMC's warehouse in the UAE on or

about November 23, 2019; and (2) NMC would pay CTF 1 $4,078,139.00 on or before May 21, 2020.

42.     On or about November 25, 2019, CTF 2 paid Nexgen $3,940,741.58 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 in accordance with the Nexgen Supplier Agreement.  A redacted copy of the SWIFT wire payment receipt of CTF 2's payment to Nexgen is attached as Exhibit 29.

43.     The May 21, 2020 payment deadline has passed, and CTF 1 has not received payment.  And, as discussed further below, Nexgen has disavowed familiarity with the invoice on which it was paid.

                *3) December 17, 2019 - Nexgen*

44.     On or about December 17, 2019, Mr. Thencheeri, who a little more than one month earlier transmitted Neopharma Invoice 6334, sent an e-mail ("December 17, 2019 Invoice E-mail") with an attached invoice ("Nexgen Invoice 7924"), delivery note ("Nexgen Delivery Note 7924"), and spreadsheet ("December 17 Spreadsheet") to Ms. Rayner to request that CTF 2 make a payment to Nexgen on NMC's behalf in accordance with the contents of the aforementioned documents pursuant to the Nexgen Supplier Agreement.  A redacted copy of the December 17, 2019 e-mail is attached as Exhibit 30, and a redacted copy of Nexgen Invoice 7924 and Nexgen Delivery Note 7924 are attached as Exhibit 31.  The December 17 Spreadsheet contained invoice details and proposed Murabaha instructions.  Soon after sending the December 17, 2019 Invoice E-mail, on or about December 17, 2019, Mr. Thencheeri sent Ms. Rayner an e-mail ("December 17, 2019 Signed Instructions E-mail) with an attached signed Murabaha instruction for the December 17, 2019 transaction with Nexgen.   A redacted copy of the

December 17, 2019 Signed Instructions E-mail is attached as Exhibit 32, and a redacted copy of the signed Murabaha Instruction pertaining to the December 17, 2019 transaction with Nexgen is attached as Exhibit 33.

45.     The terms of the December 17, 2019 transaction were (1) CTF 2, from its own bank account or CTF 1's bank account, would pay Nexgen $149,721.82 at CTF 2's earliest convenience on or about December 17, 2019 for Nexgen having shipped the goods described in Nexgen Invoice 7924 and Nexgen Delivery Note 7924 to NMC's warehouse in the UAE on or about December 15, 2019; and (2) NMC would pay CTF 1 $154,942.00 on or before June 12, 2020.

46.     On or about December 17, 2019, CTF 2 paid Nexgen $149,721.82 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 in accordance with the Nexgen Supplier Agreement.  A redacted copy of the SWIFT wire payment receipt of CTF 2's payment to Nexgen is attached as Exhibit 34.

47.     The June 12, 2020 payment deadline has passed, and CTF 1 has not received payment.  And, as discussed further below, Nexgen has disavowed familiarity with the invoice on which it was paid.

**E.  February 26, 2020 Announcement from NMC**

48.     On or about February 26, 2020, RNS, the news service of the LSE, released an announcement regarding NMC plc ("RNS Announcement"), which stated that (1) NMC plc had identified supply chain financing arrangements that were entered into by NMC plc and which were understood to have been used by entities controlled by Dr. B.R. Shetty and Mr. Khaleefa Butti Omair Yousif Ahmed Al Muhairi, (2) these arrangements were not disclosed to, or

approved by, the Board and were not disclosed as related party transactions in accordance with the LSE's Listing Rules for securities traded on the LSE, and (3) the arrangements neither were reflected on NMC plc's balance sheet nor reported in NMC plc's financial statements for the NMC plc's financial year ended on 31 December 2018.  A copy of the RNS Announcement is attached as Exhibit 35.

### F.  Neopharma and Nexgen's Coordinated Denial

49.     Upon learning of these fraud allegations that could implicate directly Neopharma and Nexgen, Channel, acting in its capacity as the Programme Manager for CTF 2, contacted Defendants regarding their unpaid invoices.

50.     Specifically, on or about March 11, 2020, Dan Luther ("Luther"), Head of Operations and Transaction Management at Channel, sent an e-mail to Mr. Vivek Bhatt ("Bhatt"), whom Neopharma designated in the Neopharma Supplier Agreement as Neopharma's primary contact for Plaintiffs, and attached a copy of a letter from Channel to Neopharma ("Letter to Neopharma"), the Neopharma Supplier Agreement, Neopharma Invoice 6334, Neopharma Delivery Note 6334, and the RNS Announcement.  A redacted copy of the e-mail is attached as Exhibit 36, and a redacted copy of the letter with appendixes is attached as Exhibit 37.

51.     In the Letter to Neopharma, Mr. Luther stated that CTF 2 had paid Neopharma the amounts referred to in Neopharma Invoice 6334 and requested that Neopharma confirm that (1) Neopharma Invoice 6334 is correct, and (2) the goods specified on Neopharma Invoice 6334 were delivered in full on the date specified in Neopharma Delivery Note 6334.

52.     Also on or about March 11, 2020, Mr. Luther sent an e-mail to Mr. Siby Mathew, whom Nexgen designated in the Nexgen Supplier Agreement as Nexgen's primary contact for

Channel and Plaintiffs, and attached a copy of a letter from Channel to Nexgen ("Letter to Nexgen"), the Nexgen Supplier Agreement, Nexgen Invoice 7795, Nexgen Delivery Note 7795, Nexgen Invoice 7924, Nexgen Delivery Note 7924, and the RNS Announcement. A redacted copy of the e-mail is attached as Exhibit 38, and a redacted copy of the letter with appendixes is attached as Exhibit 39.

53.     In the Letter to Nexgen, Mr. Luther stated that CTF 2 had paid Nexgen the amounts referred to in Nexgen Invoices 7795 and 7924 and requested that Nexgen confirm that (1) Nexgen Invoices 7795 and 7924 are correct, and (2) the goods specified on Nexgen Invoices 7795 and 7924 were delivered in full on the dates specified in Nexgen Delivery Notes 7795 and 7924.

54.     On or about March 15, 2020 at 3:57 a.m., Mr. Bhatt responded to Mr. Luther's March 11, 2020 e-mail stating: "Dear Sir, Please refer to your e-mail. This it to confirm that, the invoice referred to in your e-mail is not Neopharma's Invoice.  Regards Vivek."  A redacted copy of the e-mail is attached as Exhibit 40.

55.     Also on or about March 15, 2020 at 3:57 a.m., Mr. Mathew responded to Mr. Luther's March 11, 2020 e-mail stating: "Dear Sirs, Please refer to your e-mail. This is to confirm that invoices referred to in your e-mail is [*sic*] not Nexgen Pharma's invoice [*sic*]. Thank you. Kind Regards, Siby Mathew."  A redacted copy of the e-mail is attached as Exhibit 41.

56.     NMC has not paid CTF 1 any of the $3,010,299.50 that was due on or before May 8, 2020.

57.     NMC has not paid CTF 1 any of the $4,078,139.00 that was due on or before May 21, 2020.

58.    NMC has not paid CTF 1 any of the $154,942.00 that was due on or before June 12, 2020.

59.    Neopharma has failed to repay CTF 1 any of the $2,909,439.00 that CTF 2 paid Neopharma from CTF 1's Bank of New York Mellon, London bank account ending in 8400 in full and final satisfaction of Neopharma Invoice 6334.

60.    Nexgen has failed to repay CTF 1 any of the $3,940,741.58 that CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400 in full and final satisfaction of Nexgen Invoice 7795.

61.    Nexgen has failed to repay CTF 1 any of the $149,721.82 that CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400 in full and final satisfaction of Nexgen Invoice 7924.

<u>**CLAIMS FOR RELIEF**</u>

**FIRST CLAIM FOR RELIEF**
**Fraudulent Misrepresentation**
**(Plaintiffs Against Neopharma)**

62.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

63.    Neopharma created Neopharma Invoice 6334 and Neopharma Delivery Note 6334.

64.    Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are false.

65.    When Neopharma created Invoice 6334 and Neopharma Delivery Note 6334, Neopharma knew that Neopharma Invoice 6334 and Neopharma Delivery Note 6334 were false and that NMC did not intend to pay CTF 1.

66.    Neopharma did not deliver the goods described in Neopharma Invoice 6334 and Neopharma Delivery Note 6334 to NMC's warehouse.

67.     Neopharma intended for Plaintiffs to rely on the fraudulently misrepresented Neopharma Invoice 6334 and the fraudulently misrepresented Neopharma Delivery Note 6334 and pay the amount Neopharma Invoice 6334 claimed was owed in accordance with the Neopharma Supplier Agreement.

68.     Neopharma sent Neopharma Invoice 6334 and Neopharma Delivery Note 6334 to NMC on or about November 10, 2019.

69.     NMC sent Neopharma Invoice 6334 and Neopharma Delivery Note 6334 by e-mail to Plaintiffs via Ms. Rayner on or about November 13, 2019.

70.     Plaintiffs reasonably relied on Neopharma Invoice 6334 and Neopharma Delivery Note 6334 because Plaintiffs had successfully completed two previous transactions with Neopharma based on a similar course of dealing and in accordance with the Neopharma Supplier Agreement.

71.     Based on this similar course of dealing, on or about November 13, 2019, CTF 2 paid Neopharma $2,909,439.00 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of New York Mellon, New York to the account at the Arab Bank for Investment and Foreign Trade in the name of Neopharma ending in 0877 believing it was doing so in accordance with the Neopharma Supplier Agreement in full and final satisfaction of Neopharma Invoice 6334, with the full expectation that CTF 1 would be paid, and with the understanding that Neopharma had delivered the goods to NMC as described in Neopharma Delivery Note 6334.

72.     On or about March 11, 2020, Mr. Luther requested that Neopharma confirm that (1) Neopharma Invoice 6334 was correct and (2) the goods specified on Neopharma Invoice 6334 were delivered in full on the date specified in Neopharma Delivery Note 6334.

73.     On or about March 15, 2020 at 3:57 a.m., Mr. Bhatt, on behalf of Neopharma, responded to Mr. Luther's March 11, 2020 e-mail stating: "Dear Sir, Please refer to your e-mail. This it to confirm that, the invoice referred to in your e-mail is not Neopharma's Invoice. Regards Vivek."

74.     Mr. Bhatt's representation that Neopharma Invoice 6334 "is not Neopharma's Invoice" constitutes an admission that Neopharma did not fulfill the terms of Neopharma Invoice 6334 or Neopharma Delivery Note 6334.

75.     Because Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are false and Neopharma did not fulfill the terms of Neopharma Invoice 6334 or Neopharma Delivery Note 6334, Plaintiffs have been damaged in the amount CTF 2 paid Neopharma from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Neopharma Invoice 6334, namely $2,909,439.00.

## SECOND CLAIM FOR RELIEF
### Fraudulent Misrepresentation
### (Plaintiffs Against Nexgen)

76.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

77.     Nexgen created Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924.

78.     Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 are false.

79.     When Nexgen created Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924, Nexgen knew that Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 were false, and that NMC did not intend to pay CTF 1.

80.     Nexgen did not deliver the goods described in Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 to NMC's warehouse.

81.     Nexgen intended for Plaintiffs to rely on the fraudulently misrepresented Nexgen Invoices 7795 and 7924 and the fraudulently misrepresented Nexgen Delivery Notes 7795 and 7924 and pay the amounts Nexgen Invoices 7795 and 7924 claimed were owed in accordance with the Nexgen Supplier Agreement.

82.     Nexgen sent Nexgen Invoice 7795 and Nexgen Delivery Note 7795 to NMC on or about November 23, 2019.

83.     NMC sent Nexgen Invoice 7795 and Nexgen Delivery Note 7795 by e-mail to Plaintiffs via Ms. Rayner on or about November 25, 2019.

84.     Nexgen sent Nexgen Invoice 7924 and Nexgen Delivery Note 7924 to NMC on or about December 15, 2019.

85.     NMC sent Nexgen Invoice 7924 and Nexgen Delivery Note 7924 by e-mail to Plaintiffs via Ms. Rayner on or about December 17, 2019.

86.     Plaintiffs reasonably relied on Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 because Plaintiffs had successfully completed a previous transaction with Nexgen based on a similar course of dealing and in accordance with the Nexgen Supplier Agreement.

87.     Based on this similar course of dealing, on or about November 25, 2019, CTF 2 paid Nexgen $3,940,741.58 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 believing it was doing so in accordance with the Nexgen Supplier Agreement in full and final satisfaction of Nexgen Invoice 7795, with

the full expectation that CTF 1 would be paid, and with the understanding that Nexgen had delivered the goods to NMC as described in Nexgen Delivery Note 7795.

88.     Also based on this similar course of dealing, on or about December 17, 2019, CTF 2 paid Nexgen $149,721.82 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 believing it was doing so in accordance with the Nexgen Supplier Agreement in full and final satisfaction of Nexgen Invoice 7924, with the full expectation that CTF 1 would be paid, and with the understanding that Nexgen had delivered the goods to NMC as described in Nexgen Delivery Note 7924.

89.     On or about March 11, 2020, Mr. Luther requested that Nexgen confirm that (1) Nexgen Invoices 7795 and 7924 were correct and (2) the goods specified on Nexgen Invoices 7795 and 7924 were delivered in full on the date specified in Nexgen Delivery Notes 7795 and 7924.

90.     On or about March 15, 2020 at 3:57 a.m., Mr. Mathew, on behalf of Nexgen, responded to Mr. Luther's March 11, 2020 e-mail stating: "Dear Sirs, Please refer to your e-mail. This is to confirm that invoices referred to in your e-mail is [*sic*] not Nexgen Pharma's invoice [*sic*]. Thank you. Kind Regards, Siby Mathew."

91.     Mr. Mathew's representation that Nexgen Invoices 7795 and 7924 "is [*sic*] not Nexgen Pharma's Invoice [*sic*]" constitutes an admission that Nexgen did not fulfill the terms of Nexgen Invoices 7795 and 7924 or Nexgen Delivery Notes 7795 and 7924.

92.     Because Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 are false and Nexgen did not fulfill the terms of Nexgen Invoices 7795 and 7924 or Nexgen Delivery Notes 7795 and 7924, Plaintiffs have been damaged in the amount CTF 2 paid Nexgen

from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Nexgen Invoices 7795 and 7924, namely $4,090,463.40.

### THIRD CLAIM FOR RELIEF
### Negligent Misrepresentation
### (Plaintiffs Against Neopharma)

93.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

94.     Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are false.

95.     Neopharma did not deliver the goods described in Neopharma Invoice 6334 and Neopharma Delivery Note 6334 to NMC's warehouse.

96.     Neopharma sent the negligently misrepresented Neopharma Invoice 6334 and the negligently misrepresented Neopharma Delivery Note 6334 to NMC on or about November 10, 2019 without first confirming the accuracy of Neopharma Invoice 6334 and Neopharma Delivery Note 6334.

97.     NMC sent Neopharma Invoice 6334 and Neopharma Delivery Note 6334 by e-mail to Plaintiffs via Ms. Rayner on or about November 13, 2019.

98.     Because Plaintiffs had successfully completed two previous transactions with Neopharma based on a similar course of dealing and in accordance with the Neopharma Supplier Agreement, it was reasonably foreseeable to Neopharma that Plaintiffs would receive Neopharma Invoice 6334 and Neopharma Delivery Note 6334 once Neopharma sent Neopharma Invoice 6334 and Neopharma Delivery Note 6334 to NMC on or about November 10, 2019 without first confirming the accuracy of Neopharma Invoice 6334 and Neopharma Delivery Note 6334.

99.     Plaintiffs justifiably relied on Neopharma Invoice 6334 and Neopharma Delivery Note 6334 because Plaintiffs had successfully completed two previous transactions with

Neopharma based on a similar course of dealing and in accordance with the Neopharma Supplier Agreement.

100.    The false statements in Neopharma Invoice 6334 and Neopharma Delivery Note 6334 were the proximate cause of Plaintiffs' damages because as a result of receiving Neopharma Invoice 6334 and Neopharma Delivery Note 6334, on or about November 13, 2019, CTF 2 paid Neopharma $2,909,439.00 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of New York Mellon, New York to the account at the Arab Bank for Investment and Foreign Trade in the name of Neopharma ending in 0877 believing it was doing so in accordance with the Neopharma Supplier Agreement in full and final satisfaction of Neopharma Invoice 6334, with the full expectation that CTF 1 would be paid, and with the understanding that Neopharma had delivered the goods to NMC as described in Neopharma Delivery Note 6334.

101.    On or about March 11, 2020, Mr. Luther requested that Neopharma confirm that (1) Neopharma Invoice 6334 was correct and (2) the goods specified on Neopharma Invoice 6334 were delivered in full on the date specified in Neopharma Delivery Note 6334.

102.    On or about March 15, 2020 at 3:57 a.m., Mr. Bhatt, on behalf of Neopharma, responded to Mr. Luther's March 11, 2020 e-mail stating: "Dear Sir, Please refer to your e-mail. This it to confirm that, the invoice referred to in your e-mail is not Neopharma's Invoice. Regards Vivek."

103.    Mr. Bhatt's representation that Neopharma Invoice 6334 "is not Neopharma's Invoice" constitutes an admission that Neopharma did not fulfill the terms of Neopharma Invoice 6334 or Neopharma Delivery Note 6334.

104.    Because Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are false and Neopharma did not fulfill the terms of Neopharma Invoice 6334 or Neopharma Delivery Note 6334, Plaintiffs have been damaged in the amount CTF 2 paid Neopharma from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Neopharma Invoice 6334, namely $2,909,439.00.

### FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (Plaintiffs Against Nexgen)

105.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

106.    Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 are false.

107.    Nexgen did not deliver the goods described in Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 to NMC's warehouse.

108.    Nexgen sent the negligently misrepresented Nexgen Invoice 7795 and the negligently misrepresented Nexgen Delivery Note 7795 to NMC on or about November 23, 2019 without first confirming the accuracy of Nexgen Invoice 7795 and Nexgen Delivery Note 7795.

109.    NMC sent Nexgen Invoice 7795 and Nexgen Delivery Note 7795 by e-mail to Plaintiffs via Ms. Rayner on or about November 25, 2019.

110.    Nexgen sent the negligently misrepresented Nexgen Invoice 7924 and the negligently misrepresented Nexgen Delivery Note 7924 to NMC on or about December 15, 2019 without first confirming the accuracy of Nexgen Invoice 7924 and Nexgen Delivery Note 7924.

111.    NMC sent Nexgen Invoice 7924 and Nexgen Delivery Note 7924 by e-mail to Plaintiffs via Ms. Rayner on or about December 17, 2019.

112.     Because Plaintiffs had successfully completed a previous transaction with Nexgen based on a similar course of dealing and in accordance with the Nexgen Supplier Agreement, it was reasonably foreseeable to Nexgen that Plaintiffs would receive Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 once Nexgen sent Nexgen Invoice 7795 and Nexgen Delivery Note 7795 to NMC on or about November 23, 2019 and Nexgen Invoice 7924 and Nexgen Delivery Note 7924 to NMC on or about December 15, 2019 without first confirming the accuracy of Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924.

113.     Plaintiffs justifiably relied on Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 because Plaintiffs had successfully completed a previous transaction with Nexgen based on a similar course of dealing and in accordance with the Nexgen Supplier Agreement.

114.     The false statements in Nexgen Invoice 7795 and Nexgen Delivery Note 7795 were the proximate cause of Plaintiffs' damages because as a result of receiving Nexgen Invoice 7795 and Nexgen Delivery Note 7795, on or about November 25, 2019, CTF 2 paid Nexgen $3,940,741.58 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 believing it was doing so in accordance with the Nexgen Supplier Agreement in full and final satisfaction of Nexgen Invoice 7795, with the full expectation that CTF 1 would be paid, and with the understanding that Nexgen had delivered the goods to NMC as described in Nexgen Delivery Note 7795.

115.     The false statements in Nexgen Invoice 7924 and Nexgen Delivery Note 7924 were the proximate cause of Plaintiffs' damages because as a result of receiving Nexgen Invoice

7924 and Nexgen Delivery Note 7924, on or about December 17, 2019, CTF 2 paid Nexgen $149,721.82 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 by issuing a SWIFT wire transfer via the Bank of Baroda to the account at the Bank of Baroda in the name of Nexgen ending in 7928 believing it was doing so in accordance with the Nexgen Supplier Agreement in full and final satisfaction of Nexgen Invoice 7924, with the full expectation that CTF 1 would be paid, and with the understanding that Nexgen had delivered the goods to NMC as described in Nexgen Delivery Note 7924.

116.    On or about March 11, 2020, Mr. Luther requested that Nexgen confirm that (1) Nexgen Invoices 7795 and 7924 were correct and (2) the goods specified on Nexgen Invoices 7795 and 7924 were delivered in full on the date specified in Nexgen Delivery Notes 7795 and 7924.

117.    On or about March 15, 2020 at 3:57 a.m., Mr. Mathew, on behalf of Nexgen, responded to Mr. Luther's March 11, 2020 e-mail stating: "Dear Sirs, Please refer to your e-mail. This is to confirm that invoices referred to in your e-mail is [*sic*] not Nexgen Pharma's invoice [*sic*]. Thank you. Kind Regards, Siby Mathew."

118.    Mr. Mathew's representation that Nexgen Invoices 7795 and 7924 "is [*sic*] not Nexgen Pharma's Invoice [*sic*]" constitutes an admission that Nexgen did not fulfill the terms of Nexgen Invoices 7795 or 7924.

119.    Because Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 are false and Nexgen did not fulfill the terms of Nexgen Invoices 7795 and 7924 or Nexgen Delivery Notes 7795 and 7924, Plaintiffs have been damaged in the amount CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Nexgen Invoices 7795 and 7924, namely $4,090,463.40.

## FIFTH CLAIM FOR RELIEF
### Civil Conspiracy to Defraud
### (Plaintiffs Against All Defendants)

120.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

121.    As described above, Neopharma and Nexgen, acting in concert with NMC, each defrauded Plaintiffs through the use of false invoices and delivery notes into paying amounts due for goods that were never delivered in accordance with the Customer Agreement and the Supplier Agreements.

122.    Neopharma and Nexgen agreed to work together, and did work together, with the joint purpose of unlawfully defrauding Plaintiffs.

123.    Evidence of Neopharma and Nexgen's coordination includes: (1) Dr. B.R. Shetty was the founder and chairman of both Neopharma and NMC; (2) Dr. B.R. Shetty, acting as Neopharma's Managing Director, signed the Neopharma Supplier Agreement for and on behalf of Neopharma; (3) Nexgen is a joint venture between Hetero Group of India and Neopharma, each of which owns 50% of Nexgen; (4) NMC plc was designated to receive service on behalf of the Suppliers in the Supplier Agreements in the event the Supplier was not a company registered in England and Wales; (5) Neopharma and Nexgen sent within one minute of each other nearly identically worded e-mails denying that Neopharma Invoice 6334 and Nexgen Invoices 7795 and 7924 were their respective invoices; and (6) the RNS Announcement noted, among other things, that NMC plc had identified supply chain financing arrangements that were entered into by NMC plc and which were understood to have been used by entities controlled by Dr. B.R. Shetty and Mr. Khaleefa Butti Omair Yousif Ahmed Al Muhairi.

124.    As a direct and proximate result of Defendants' coordinated fraudulent acts, Plaintiffs have been damaged in the amount CTF 2 paid Neopharma from CTF 1's Bank of New

York Mellon, London bank account ending in 8400 as full and final satisfaction of Neopharma Invoice 6334, namely $2,909,439.00, and in the amount CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Nexgen Invoices 7795 and 7924, namely $4,090,463.40.

**SIXTH CLAIM FOR RELIEF**
**Violation of 18 U.S.C. § 1964(c) (RICO)**
**(Plaintiffs Against All Defendants)**

125.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

126.   As described above, Neopharma and Nexgen devised or intended to devise a scheme or artifice to defraud Plaintiffs through the use of false invoices and delivery notes into paying amounts due for goods that were never delivered in accordance with the Customer Agreement and the Supplier Agreements.

127.   Defendants' coordinated actions and conspiracy to defraud, as described above, constituted an enterprise.

128.   An essential part of Defendants' scheme to defraud Plaintiffs was Defendants' pattern of racketeering activity via wire fraud.  Defendants repeatedly used e-mail in violation of the United States criminal wire fraud statute, 18 U.S.C. § 1343, in that for the purposes of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations, and promises, Defendants did transmit and cause to be transmitted by means of wire in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, specifically, Defendants e-mailed Plaintiffs nearly identically worded e-mails within one minute of each other denying that Neopharma Invoice 6334 and Nexgen Invoices 7795 and 7924 were Neopharma's and Nexgen's respective invoices to attempt to cover up Defendants' scheme to defraud.

129.   As a direct and proximate result of Defendants' coordinated fraudulent acts, Plaintiffs have been damaged in the amount CTF 2 paid Neopharma from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Neopharma Invoice 6334, namely $2,909,439.00, and in the amount CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Nexgen Invoices 7795 and 7924, namely $4,090,463.40.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Contract**
**(Plaintiff CTF 2 Against Neopharma)**

130.   Plaintiff CTF 2 incorporates by reference all paragraphs above as if fully set forth herein.

131.   The Neopharma Supplier Agreement is a valid contract between CTF 2 and Neopharma.

132.   Neopharma breached provision 4.1.2 of the Neopharma Supplier Agreement in that Neopharma's above described coordinated actions with Nexgen and NMC, and defrauding, conspiracy to defraud, and scheme to defraud CTF 2, show that Neopharma did not enter into the Neopharma Supplier Agreement on arm's length commercial terms with NMC and CTF 2.

133.   As described above, CTF 2 performed its obligations under the Neopharma Supplier Agreement in that CTF 2 made timely payments as full and final satisfaction of all Neopharma invoices in accordance with the Neopharma Supplier Agreement.

134.   Neopharma did not fulfill and thereby breached its obligations under the contract, and CTF 1 has not received repayment of the funds paid, which constitutes a breach of agreement with CTF 2.

135.    As described above, CTF 2 has been damaged in the amount it paid Neopharma as full and final satisfaction of Neopharma Invoice 6334, namely $2,909,439.00.

## EIGHTH CLAIM FOR RELIEF
### Breach of Contract
### (Plaintiff CTF 2 Against Nexgen)

136.    Plaintiff CTF 2 incorporates by reference all paragraphs above as if fully set forth herein.

137.    The Nexgen Supplier Agreement is a valid contract between CTF 2 and Nexgen.

138.    Nexgen breached provision 4.1.2 of the Nexgen Supplier Agreement in that Nexgen's above described coordinated actions with Neopharma and NMC, and defrauding, conspiracy to defraud, and scheme to defraud CTF 2, show that Nexgen did not enter into the Nexgen Supplier Agreement on arm's length commercial terms with NMC and CTF 2.

139.    As described above, CTF 2 performed its obligations under the Nexgen Supplier Agreement in that CTF 2 made timely payments as full and final satisfaction of all Nexgen invoices in accordance with the Nexgen Supplier Agreement.

140.    Nexgen did not fulfill and thereby breached its obligations under the contract, and CTF 1 has not received repayment of the funds paid, which constitutes a breach of agreement with CTF 2.

141.    As described above, CTF 2 has been damaged in the amount it paid Nexgen as full and final satisfaction of Nexgen Invoices 7795 and 7924, namely $4,090,463.40.

## NINTH CLAIM FOR RELIEF
### Breach of Covenant of Good Faith and Fair Dealing
### (Plaintiff CTF 2 Against Neopharma)

142.    Plaintiff CTF 2 incorporates by reference all paragraphs above as if fully set forth herein.

143.     The Neopharma Supplier Agreement is a valid contract between CTF 2 and Neopharma.

144.     Implicit in the supply chain financing arrangements and CTF 2 making payments thereunder was Neopharma would act in good faith and deal fairly in connection with its obligations under the contract.

145.     Neopharma acted in bad faith or with malicious motive to deny CTF 2 the benefit of the bargain intended by Neopharma and CTF 2 by using a false invoice and delivery note to trick CTF 2 into paying an amount due for goods that were never delivered in accordance with the Customer Agreement and the Neopharma Supplier Agreement.

146.     As described above, CTF 2 has been damaged in the amount it paid Neopharma as full and final satisfaction of Neopharma Invoice 6334, namely $2,909,439.00.

**TENTH CLAIM FOR RELIEF**
**Breach of Covenant of Good Faith and Fair Dealing**
**(Plaintiff CTF 2 Against Nexgen)**

147.     Plaintiff CTF 2 incorporates by reference all paragraphs above as if fully set forth herein.

148.     The Nexgen Supplier Agreement is a valid contract between CTF 2 and Nexgen.

149.     Implicit in the supply chain financing arrangements and CTF 2 making payments thereunder was Nexgen would act in good faith and deal fairly in connection with its obligations under the contract.

150.     Nexgen acted in bad faith or with malicious motive to deny CTF 2 the benefit of the bargain intended by Nexgen and CTF 2 by using false invoices and delivery notes to trick CTF 2 into paying amounts due for goods that were never delivered in accordance with the Customer Agreement and the Nexgen Supplier Agreement.

151.    As described above, CTF 2 has been damaged in the amount it paid Nexgen as full and final satisfaction of Nexgen Invoices 7795 and 7924, namely $4,090,463.40.

## ELEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Plaintiffs Against Neopharma)

152.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

153.    CTF 2 conveyed a benefit on Neopharma in that CTF 2 paid Neopharma $2,909,439.00 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Neopharma Invoice 6334.

154.    However, Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are false, and Neopharma did not deliver the goods described in Neopharma Delivery Note 6334 to NMC's warehouse.

155.    Neopharma was enriched unjustly as a result of CTF 2 making payment to Neopharma, Neopharma not delivering goods as described in Neopharma Delivery Note 6334, and Plaintiffs not being paid for having made payment to Neopharma for an invoice Neopharma disavows.

156.    Because Neopharma did not perform the work for which CTF 2 paid Neopharma from CTF 1's Bank of New York Mellon, London bank account ending in 8400, it would be inequitable for Neopharma to retain the $2,909,439.00.

## TWELFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Plaintiffs Against Nexgen)

157.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

158.     CTF 2 conveyed a benefit on Nexgen in that CTF 2 paid Nexgen $4,090,463.40 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Nexgen Invoices 7795 and 7924.

159.     However, Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 are false, and Nexgen did not deliver the goods described in Nexgen Delivery Notes 7795 and 7924 to NMC's warehouse.

160.     Nexgen was enriched unjustly as a result of CTF 2 making payments to Nexgen, Nexgen not delivering goods as described in Nexgen Delivery Notes 7795 and 7924, and Plaintiffs not being paid for having made payments to Nexgen for invoices Nexgen disavows.

161.     Because Nexgen did not perform the work for which CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400, it would be inequitable for Nexgen to retain the $4,090,463.40.

## THIRTEENTH CLAIM FOR RELIEF
### Conversion
### (Plaintiffs Against Neopharma)

162.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

163.     CTF 2 paid Neopharma $2,909,439.00 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Neopharma Invoice 6334.

164.     Neopharma Invoice 6334 and Neopharma Delivery Note 6334 are false, and Neopharma did not deliver the goods described in Neopharma Delivery Note 6334 to NMC's warehouse.

165.     Mr. Bhatt, on behalf of Neopharma, represented that Neopharma Invoice 6334 "is not Neopharma's Invoice."

166.    Because Neopharma did not perform the work for which CTF 2 paid Neopharma from CTF 1's Bank of New York Mellon, London bank account ending in 8400, the $2,909,439.00 belongs to Plaintiffs.

167.    Neopharma has failed to repay Plaintiffs any of the $2,909,439.00.

168.    Neopharma's possession of the $2,909,439.00 is a wrongful exercise of dominion and control over property owned by Plaintiffs in a manner inconsistent with Plaintiffs' rights as the money's owners.

## FOURTEENTH CLAIM FOR RELIEF
### Conversion
### (Plaintiffs Against Nexgen)

169.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

170.    CTF 2 paid Nexgen $4,090,463.40 from CTF 1's Bank of New York Mellon, London bank account ending in 8400 as full and final satisfaction of Nexgen Invoices 7795 and 7924.

171.    Nexgen Invoices 7795 and 7924 and Nexgen Delivery Notes 7795 and 7924 are false, and Nexgen did not deliver the goods described in Nexgen Delivery Notes 7795 and 7924 to NMC's warehouse.

172.    Mr. Mathew, on behalf of Nexgen, represented that Nexgen Invoices 7795 and 7924 "is [*sic*] not Nexgen Pharma's Invoice [*sic*]."

173.    Because Nexgen did not perform the work for which CTF 2 paid Nexgen from CTF 1's Bank of New York Mellon, London bank account ending in 8400, the $4,090,463.40 belongs to Plaintiffs.

174.    Nexgen has failed to repay Plaintiffs any of the $4,090,463.40.

175.     Nexgen's possession of the $4,090,463.40 is a wrongful exercise of dominion and control over property owned by Plaintiffs in a manner inconsistent with Plaintiffs' rights as the money's owners.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs respectfully request that the Court:

A.     Order that Defendants pay Plaintiffs any and all damages sustained by Plaintiffs arising from the foregoing wrongful and unlawful acts of Defendants;

B.     Order that Plaintiffs be awarded their costs and reasonable attorneys' fees incurred in connection with the institution and prosecution of this civil action;

C.     Award Plaintiffs punitive damages as to the First, Second, Fifth, Sixth, Thirteenth, and Fourteenth Claims for Relief in an amount to be determined at trial; and

D.     Order such other and further relief, including equitable relief, as justice may require.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: June 16, 2020                    Respectfully Submitted,


                                        _s/ Melissa A. Alcantara_____
                                        Melissa A. Alcantara
                                        **DICKINSON WRIGHT PLLC**
                                        1825 I St. N.W., Suite 900
                                        Washington, DC 20006
                                        T: (202) 659-6949
                                        F: (844) 670-6009
                                        E: MAlcantara@dickinsonwright.com
                                        *Attorney for Plaintiffs Channel Trade Finance 1*
                                        *SPC, on behalf of and for the account of TF 1.1 SP,*
                                        *and Channel Trade Finance 2 SPC, on behalf of and*
                                        *for the account of TF 2.1 SP*

## **<u>LOCAL RULE 201.1 CERTIFICATION OF NON-ARBITRABILITY</u>**

Pursuant to Local Civil Rule 201.1(d), the undersigned counsel for Plaintiff Channel Trade Finance 1 SPC, on behalf of and for the account of TF 1.1 SP, one of its segregated portfolios, and Plaintiff Channel Trade Finance 2 SPC, on behalf of and for the account of TF 2.1 SP, one of its segregated portfolios, hereby certifies that the within matter is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000.

Dated: June 16, 2020

 s/ Melissa A. Alcantara       
Melissa A. Alcantara
**DICKINSON WRIGHT PLLC**
1825 I St., N.W., Suite 900
Washington, DC 20006
T: (202) 659-6949
F: (844) 670-6009
E: MAlcantara@dickinsonwright.com
*Attorney for Plaintiffs Channel Trade Finance 1*
*SPC, on behalf of and for the account of TF 1.1 SP,*
*and Channel Trade Finance 2 SPC, on behalf of and*
*for the account of TF 2.1 SP*

## **LOCAL RULES 11.2 and 40.1 CERTIFICATION**

Pursuant to Local Civil Rules 11.2 and 40.1, the undersigned counsel for Plaintiff Channel Trade Finance 1 SPC, on behalf of and for the account of TF 1.1 SP, one of its segregated portfolios, and Plaintiff Channel Trade Finance 2 SPC, on behalf of and for the account of TF 2.1 SP, one of its segregated portfolios, hereby certifies that the matter in controversy is not the subject of any other action, arbitration, or administrative proceeding in any court or of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on: June 16, 2020          s/ Melissa A. Alcantara_____
Melissa A. Alcantara
**DICKINSON WRIGHT PLLC**
1825 I St., N.W., Suite 900
Washington, DC 20006
T: (202) 659-6949
F: (844) 670-6009
E: MAlcantara@dickinsonwright.com
*Attorney for Plaintiffs Channel Trade Finance 1*
*SPC, on behalf of and for the account of TF 1.1 SP,*
*and Channel Trade Finance 2 SPC, on behalf of and*
*for the account of TF 2.1 SP*